**CITY OF CHANUTE, KANSAS; City of Auburn, Kansas; City of Cleveland, Oklahoma; City of Garnett, Kansas; City of Humboldt, Kansas; City of Iola, Kansas; City of Neodesha, Kansas; City of Osage, Kansas, Plaintiffs–Appellants,**

v.

**WILLIAMS NATURAL GAS COMPANY, Defendant–Appellee.**

Nos. 93–3101, 93–3125.

United States Court of Appeals, Tenth Circuit.

Aug. 8, 1994.

Rehearing Denied Sept. 8, 1994.

Charles F. Wheatley, Jr. (Don Charles Uthus, Peter A. Goldsmith, and Timothy P. Ingram, of Wheatley & Ranquist, Annapolis, MD; Larry D. Hendricks and Ronald Greg Wright, of Stumbo, Stumbo, Hanson & Hendricks, Topeka, KS; and Robert Pennington, of Henshall, Pennington & Brake, Chanute, KS, with him on the briefs), of Wheatley & Ranquist, Annapolis, MD, for plaintiffs-appellants.

John T. Schmidt (C. Kevin Morrison, of Conner & Winters, Tulsa, OK; David Batow, General Counsel, of Williams Natural Gas Co., Tulsa, OK; William J. Sears, Senior Counsel, of The Williams Companies, Inc., Tulsa, OK; and Donald W. Bostwick and Teresa J. James, of Adams, Jones, Robinson & Malone, Wichita, KS, with him on the briefs), of Conner & Winters, Tulsa, OK, for defendant-appellee.

Before ANDERSON and TACHA, Circuit Judges, and ROSZKOWSKI,* District Judge.

TACHA, Circuit Judge.

Plaintiffs appeal from the district court's denial of their motion for attorneys' fees and costs pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26. *See City of Chanute v. Williams Natural Gas Co.,* 820 F.Supp. 1290 (D.Kan.1993). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Background

This appeal is the latest round in a long string of litigation between plaintiff cities ("the cities") and defendant, Williams Natural Gas Co. ("Williams"). The specific issue we must decide is whether the cities are entitled to attorneys' fees under § 16 of the Clayton Act. Because the results of previous trips by these parties up the litigation ladder are relevant to the attorneys' fee issue, we recount prior litigation as necessary background.[1]

The cities purchase natural gas and resell it to customers located in the cities and surrounding areas. Williams owns and operates the only interstate pipeline serving the cities. Originally, each of the cities had a "full requirements" contract with Williams. Such contracts require the cities to purchase all their natural gas from Williams and in return Williams agrees to supply all of the cities' natural gas needs. As a result, all of the natural gas used by the cities was bought from Williams.

In December 1986, however, the landscape began to change. Williams sought Federal Energy Regulatory Commission ("FERC") approval to allow it to transport gas from third-party suppliers—thereby acting as a common carrier—on a permanent basis.[2] While awaiting FERC approval, Williams initiated a temporary open access program to transport third-party gas for the cities pursuant to § 311 of the Natural Gas Policy Act, 15 U.S.C. § 3371 (1978). The cities began to negotiate and enter into agreements for gas from third-party suppliers who offered gas at lower prices than Williams.

The temporary open access program ran from December 1986 to August 1, 1987. During this period, Williams experienced difficulty paying its third-party suppliers.[3] On August 1, 1987, Williams ended its temporary open access program and largely closed its pipeline to third-party gas.[4] Two days after Williams closed its pipeline, the cities filed suit alleging violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and requesting injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26. On February 5, 1988, the Federal District Court for the District of Kansas granted the cities a preliminary injunction. *See Chanute I.*

---

* The Honorable Stanley J. Roszkowski, Senior District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

1. A more detailed factual history of this case, as well as a history of the natural gas industry, is set out in several district court opinions. *See City of Chanute v. Williams Natural Gas Co.,* 678 F.Supp. 1517 (D.Kan.1988) (*Chanute I*); *City of Chanute v. Williams Natural Gas Co.,* 1990–1 Trade Cas. ¶ 68,967, 1990 WL 20019 (D.Kan. Feb. 16, 1990) (*Chanute II*); *City of Chanute v. Williams Natural Gas Co.,* 743 F.Supp. 1437 (D.Kan.1990) (*Chanute III*). In addition, this court has previously recounted some of the background of this case in *City of Chanute v. Williams Natural Gas Co.,* 955 F.2d 641, 646 (10th Cir.) (*Chanute IV*), cert. denied, — U.S. ——, 113 S.Ct. 96, 121 L.Ed.2d 57 (1992), but we repeat that background here for convenience. We will refer to these cases by number in the remainder of this opinion. For those of you keeping score at home that would make the district court opinion in this appeal, *City of Chanute v. Williams Natural Gas Co.,* 820 F.Supp. 1290 (D.Kan.1993), "*Chanute V*" and this opinion "*Chanute VI.*"

2. Williams sought a transportation tariff pursuant to FERC Order No. 436, 50 Fed.Reg. 42,408 (1985).

3. This difficulty was due to the "take-or-pay" provisions in Williams' contracts with the suppliers. Such provisions obligate a pipeline to pay for certain volumes of gas even if the pipeline is unable to sell that amount to its customers.

4. Some third-party gas remained available under FERC regulation. Williams was still required to transport third-party gas under FERC Order No. 451 which "established procedures for the renegotiation of ... pre-NGPA gas prices and the release of gas covered by ... pre-NGPA gas purchase contracts." *Chanute I,* 678 F.Supp. at 1524–25.

Williams subsequently filed a notice of appeal to this court, and on March 3, 1988, we granted a stay of the preliminary injunction pending full resolution of the appeal. Prior to oral argument on the preliminary injunction, FERC approved Williams' revised stipulation and agreement, or "RS & A," establishing Williams' permanent open access program beginning July 20, 1988. After approval of the RS & A, Williams filed a suggestion of mootness with this court. At oral argument on July 22, 1988, we asked the parties to attempt to reach agreement in light of the RS & A and informed them that, if they could not reach agreement, we would remand the case to the district court for consideration of the mootness issue. The same day, the parties reached agreement and filed a stipulation that provided for a withdrawal of the appeal and a dismissal of the preliminary injunction. We approved the stipulation on July 26, 1988, vacated the preliminary injunction along with our stay order, and dismissed the appeal. There is some disagreement between the parties regarding whether the stipulation provided rights to the cities greater than those they were due as a result of the RS & A and the general open access program. We find it unnecessary to resolve this question for purposes of this appeal.

Because there remained a damages claim by the cities against Williams under § 4 of the Clayton Act, 15 U.S.C. § 15, arising from the period of Williams' reversal of its interim open access program, the case returned to the district court for an adjudication of the merits of the cities' antitrust allegations. The district court granted summary judgment for Williams on all of the cities' claims. *See Chanute II; Chanute III.* We affirmed the district court's judgment for Williams. *See Chanute IV.*

Despite the rejection of their antitrust claims on the merits, the cities brought the motion for attorneys' fees under § 16 of the Clayton Act which is now before us. The

cities argue both that they are formally "prevailing parties" in light of their success in getting a preliminary injunction against Williams and that at any rate they have "substantially prevailed" in light of the terms of the stipulation agreement. Rejecting these arguments, on February 18, 1993, the district court denied the cities' motion for attorneys' fees.

On March 19, 1993, the cities filed a notice of appeal with this court that identified the appealing parties as "City of Chanute, Kansas, *et al.*" (appeal No. 93–3101). Recognizing that a notice of appeal so captioned is potentially ineffective as to the seven of the eight plaintiff cities not specifically named, on April 8, 1993, we directed the parties to brief the issue of our jurisdiction to hear the appeals of the seven unnamed cities. Apparently recognizing the potential jurisdiction problem, the cities filed with the district court a motion under Fed.R.App.P. 4(a)(5) for an extension of time to file an amended notice of appeal. On April 15, 1993, the district court granted the cities' motion, giving them ten days to file an amended notice of appeal. The cities filed an amended notice of appeal on April 21, 1993 specifically naming all eight cities involved in the Williams litigation (appeal No. 93–3125).[5] The cities also filed a motion with this court, opposed by Williams, to vacate our order that the parties brief the jurisdictional issue in light of the amended notice of appeal. It is in this posture that the case is now before us.

## II. Sufficiency of Plaintiffs' Notice of Appeal [6]

■ As a preliminary matter, Williams continues to maintain that the appeals of the seven cities not specifically · named in the original notice of appeal must be dismissed for lack of jurisdiction. Fed.R.App.P. 3(c) directs that a "notice of appeal shall specify the party or parties taking the appeal." [7] In

5. We have consolidated the appeals numbered 93–3101 (first notice of appeal) and 93–3125 (second notice of appeal) and dispose of both through this opinion.

6. We do not find it necessary to rule on the cities' motion to vacate our order to brief the jurisdictional issue. We have determined simply

to decide the issue which in any case was briefed by both parties.

7. We quote here from the version of Fed. R.App.P. 3(c) in effect at the time the cities filed their notice of appeal.

*Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court made clear that compliance with this rule is indispensable to appellate jurisdiction. *Id.* at 315–316, 108 S.Ct. at 2408. The Court also specifically held in *Torres* that use of the phrase *"et al."* in a notice of appeal is *not* sufficient to satisfy Rule 3(c) as to those parties not otherwise specifically named in the notice. *Id.* at 317–318, 108 S.Ct. at 2409; *see also Dalton Dev. Project v. Unsecured Creditors Comm.,* 948 F.2d 678, 681–82 (10th Cir.1991); *Laidley v. McClain,* 914 F.2d 1386, 1389 (10th Cir.1990) (holding that "the failure to specifically designate a party *somewhere* in the notice of appeal is a jurisdictional bar to that party's appeal") (emphasis added). This is exactly the situation with the cities' first notice of appeal. Filing the notice on behalf of "City of Chanute, Kansas, *et al."* without more is sufficient notice of appeal only as to the City of Chanute, Kansas.

 Only if the cities' second, amended notice of appeal is valid do we have jurisdiction over the appeals of the seven cities not named in the original notice. Fed.R.App.P. 4(a)(1) directs that to be effective, a notice of appeal must be filed within thirty days of the entry of the judgment or order from which the party appeals (the "prescribed period"). It is undisputed that the cities' amended notice of appeal was not filed within the prescribed period (the judgment appealed from was entered on February 18, 1993, and the amended notice of appeal was not filed until April 21, 1993). Therefore, the validity of the amended notice of appeal depends upon the validity of the district court's grant of the cities' Rule 4(a)(5) motion to extend the time to file notice.[8] Rule 4(a)(5) provides:

> The district court, upon a showing of excusable neglect ..., may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the [original prescribed period].... No such extension shall exceed 30 days past [the prescribed period] or 10 days from the date of the entry of the order granting the [Rule 4(a)(5)] motion, whichever is later.

The district court found "excusable neglect" on the part of the cities. We review the district court's determination of "excusable neglect" with respect to a Rule 4(a)(5) motion only for an abuse of discretion. *Gooch v. Skelly Oil Co.,* 493 F.2d 366, 368 (10th Cir.), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974).

Williams argues that at best the record in this case supports only simple mistake or failure to discover the well established Supreme Court precedent in *Torres* as reason for the cities' failure in the first instance to file effective notice of appeal. Williams contends that neither of these reasons is sufficient grounds for a finding of excusable neglect under Rule 4(a)(5) and that the district court therefore abused its discretion in granting the Rule 4(a)(5) motion. We disagree.

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court interpreted the meaning of "excusable neglect" in the context of the provision for late filings in bankruptcy law. The Court pointed out that "absent sufficient indication to the contrary, ... Congress intends the words in its enactments to carry their ordinary, contemporary common meaning." *Id.* at ——, 113 S.Ct. at 1495 (internal quotations omitted). It pointed out further that the common meaning of "neglect" is " 'to give little attention or respect' to a matter, or ... 'to leave undone or unattended to esp[ecially] through carelessness.' " *Id.* at ————, 113 S.Ct. at 1494–95 (emphasis omitted) (quoting Webster's Ninth New Col-

---

**8.** It is appropriate here to note the cities' argument that we should not address Williams jurisdictional challenge to the appeal because Williams did not cross-appeal the district court's grant of the cities' Rule 4(a)(5) motion. We consider the question of jurisdiction nonetheless because the circumstances of this case fairly raise jurisdictional concerns, and, as always, "we have a duty to inquire into our own jurisdiction." *McGeorge v. Continental Airlines, Inc.,* 871 F.2d 952, 953 (10th Cir.1989); *see also Gooch v. Skelly Oil Co.,* 493 F.2d 366 (10th Cir.) (considering propriety of district court's grant of Rule 4(a)(5) motion absent cross-appeal on the issue), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974).

legiate Dictionary 791 (1983)). The Court concluded that in using the term "excusable neglect" in the bankruptcy code, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at ——, 113 S.Ct. at 1495. The Court directed further that in determining where neglect is "excusable" we must "tak[e] account of all relevant circumstances surrounding the party's omission." *Id.* at ——, 113 S.Ct. at 1498. The Court specifically pointed to four factors relevant to this calculation: "the danger of prejudice to [the nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id; see also In re Centric Corp.,* 901 F.2d 1514, 1517 (10th Cir.), *cert. denied,* 498 U.S. 852, 111 S.Ct. 145, 112 L.Ed.2d 112 (1990).

■ Because the Court's analysis of what constitutes "excusable neglect" in the bankruptcy context rested on the plain meaning of the terms, there is no reason that the meaning would be different in the context of Fed. R.App.P. 4(a)(5). *See United States v. Hooper,* 9 F.3d 257, 258–59 (2d Cir.1993) (applying the *Pioneer* analysis of "excusable neglect" in the context of Fed.R.App.P. 4(a)(5); *see also Pioneer,* —— U.S. at ——, 113 S.Ct. at 1496 (noting that "excusable neglect" in the context of the Fed.R.Civ.P. 6(b) carries the same commonly accepted meaning as discussed in the bankruptcy rules context such that it "may extend to inadvertent delays"); *Romero v. Peterson,* 930 F.2d 1502, 1505 (10th Cir.1991) (holding that the presence of "excusable neglect" under Rule 4(a)(5) "should be determined on the basis of the common sense meaning of the two simple

words") (internal quotations omitted). Thus, we apply the *Pioneer* test for "excusable neglect" under Fed.R.App.P. 4(a)(5).[9] This is not to say that the test for excusable neglect is not a strict one. It is merely to say that, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' ... is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1496 (footnotes omitted).

■ Focusing on the four factors outlined in *Pioneer,* we cannot say that the district court abused its discretion in finding excusable neglect. Williams focuses on factor three of the *Pioneer* analysis, pointing out that avoidance of the delay in filing the notice of appeal seems to have been within the reasonable control of the cities.[10] It is true that fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable, *see United States v. Andrews,* 790 F.2d 803, 806 (10th Cir.1986) (finding excusable neglect where filing delay occurred because defendant was seriously ill, heavily medicated, and not represented by counsel), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987); *United States v. Twomey,* 845 F.2d 1132, 1134 (1st Cir.1988) (finding excusable neglect where filing delay resulted from actions of postal service or court personnel), and that therefore this case is an arguable one. However, under the entire circumstances of the case and looking to the other three *Pioneer* factors, the district court acted within its discretion. We see no danger of prejudice to Williams from the delay. The amended notice of appeal was filed only 31 days after the end of the period pre-

---

9. The Court in *Pioneer* also found it relevant to determining the meaning of "excusable neglect" that a flexible understanding of the phrase "accords with the policies underlying Chapter 11 and the bankruptcy rules." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1495. We see nothing in the policies underlying the Federal Rules of Appellate Procedure which would lead us to a different conclusion as to the meaning of the phrase. *See Torres,* 487 U.S. at 316, 108 S.Ct. at 2408 (con-

firming that "the requirements of the rules of procedure should be liberally construed") (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

10. It appears that the cities simply mistakenly captioned their first notice of appeal "City of Chanute, Kansas, *et al.*" rather than naming all plaintiff cities.

scribed for notice of appeal in Fed.R.App.P. 4(a)(1), a very short time in the context of a protracted litigation battle during which the parties have been well aware of each others' identities. In addition, there is no evidence that the cities acted in other than good faith. We therefore affirm the district court's grant of the cities' Rule 4(a)(5) motion for extension of time to file notice of appeal. The cities' second notice of appeal is effective and all of the city plaintiffs are properly before us.

### III. Award of Attorneys' Fees

The cities argue that the district court erred in denying their motion for attorneys' fees under § 16 of the Clayton Act, 15 U.S.C. § 26 (we refer to this section as "§ 16" in the balance of this opinion), which provides:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, ... when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, ... and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue.... In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

The cities contend that they have "substantially prevailed" so as to merit attorneys' fees under § 16. They cite two bases for this contention. First, they point to the preliminary injunction issued against Williams by the district court. *See Chanute I.* Second, they cite their stipulation agreement with Williams granting them certain rights. We find that the cities have not "substantially prevailed" and therefore are not entitled to attorneys' fees under § 16.

### A. Applicability of Civil Rights Statute Framework for Award of Attorneys' Fees

Most of the case law on attorneys' fee awards to prevailing parties comes from the civil rights context under 42 U.S.C. § 1988, which provides that "[i]n any action or proceeding to enforce a provision of [enumerated civil rights statutes], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." This language is very similar, though not identical, to that in § 16 of the Clayton Act (providing for attorneys' fees for "prevailing parties" rather than for a party who "substantially prevails" under § 16). The interpretive framework that has developed around § 1988 illustrates that § 1988 itself effectively entails a "substantially" prevailing party test as is expressly provided for in § 16. *See* subsection B *infra* outlining § 1988 fee award framework; *see also Maher v. Gagne,* 448 U.S. 122, 127, 100 S.Ct. 2570, 2573, 65 L.Ed.2d 653 (1980) (approving district court decision which awarded attorneys' fees on the grounds that the plaintiff had received "substantially" the relief sought through a consent decree). Other courts that have considered fee awards under § 16 have done so using the § 1988 analytical framework. *See, e.g. Royal Crown Cola Co. v. Coca–Cola Co.,* 887 F.2d 1480, 1485 (11th Cir.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990); *Southwest Marine, Inc. v. Campbell Indus.,* 732 F.2d 744, 746–47 (9th Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984); *Grumman Corp. v. LTV Corp.,* 533 F.Supp. 1385, 1387–88 (E.D.N.Y.1982). We accept the reasoning of these cases and apply the § 1988 framework to this case.

### B. Application of Attorneys' Fee Award Framework

Under 42 U.S.C. § 1988, and by analogy § 16 of the Clayton Act, there are two situations in which a party is deemed to have sufficiently "prevailed" to qualify for an attorneys' fee award. First, a party may be awarded attorneys' fees where it has received "at least some relief on the merits of [its] claim" by judicial determination. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). Such relief can under certain circumstances include the grant

of a preliminary injunction. *See Dahlem v. Board of Educ.,* 901 F.2d 1508, 1511–1514 (10th Cir.1990) (finding a preliminary injunction was sufficient relief on the merits to warrant attorneys' fee award under § 1988 where suit was subsequently mooted by passage of time before appeal of the injunction and before full adjudication on the merits). The cities argue, based on our decision in *Dahlem,* that the district court's grant of a preliminary injunction in *Chanute I* entitles them to attorneys' fees as prevailing parties in this case.

This argument misses the mark. First, unlike *Dahlem* where the injunction action was mooted "through no acquiescence by the defendant, while the order was on appeal," 901 F.2d at 1512, here the injunction action was dismissed because a stipulation agreement was reached. Thus, the case is more appropriately analyzed under the second, "catalyst test" for attorneys' fee awards (see below). Further, and most importantly, in *Dahlem,* because the plaintiff's claim was mooted before appeal of the preliminary injunction or full adjudication, the preliminary injunction represented the final word from the courts on the merits of the case. Here, by contrast, there was an eventual full adjudication on the merits resulting in a rejection of all of the cities' antitrust allegations. *See Chanute IV* (upholding the district court's dismissal of all claims).[11] The substantive determinations underlying the grant of the preliminary injunction were therefore overturned.

The Supreme Court's analysis in *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), is relevant here. In *Hewitt,* the Third Circuit ruled that plaintiff's constitutional rights had been violated, but remanded the case for qualified immunity analysis. 712 F.2d 48 (3d Cir.1983). Subsequently, the district court held and the Third Circuit affirmed that qualified immunity shielded the defendants, thereby rejecting the plaintiff's claims on the merits. 745 F.2d 46 (3d Cir.1984). In holding that the plaintiff was not entitled to attorneys' fees based on

the Third Circuit's earlier, favorable statement on the law, the Supreme Court said: "We conclude that a favorable judicial statement of law in the course of litigation that [in the end] results in judgment against the plaintiff does not suffice to render him a 'prevailing party.' Any other result strains both the statutory language and common sense." *Id.* 482 U.S. at 763, 107 S.Ct. at 2677. Though admittedly a party may receive more tangible short term benefits from a preliminary injunction than from a declaratory statement of the law that has no effect due to qualified immunity, allowing attorneys' fees for a preliminary injunction where the bases for a plaintiff's claims are ultimately rejected similarly "strains both the statutory language [here of § 16] and common sense." The cities did not receive a judicial determination on the merits warranting the award of attorneys' fees.

■ A party may also be deemed to have prevailed sufficiently to warrant the award of attorneys' fees under a two part "catalyst test." Under this test a plaintiff must have been a "significant catalyst" causing a defendant to change position, and the defendant's change in position must have been required under law. *See Supre v. Ricketts,* 792 F.2d 958, 962 (10th Cir.1986); *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1474–75 (10th Cir.1985); *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978) (first establishing the catalyst test).

■ The cities argue that they are entitled to attorneys' fees under the catalyst test because their litigation caused Williams to enter into a stipulation agreement granting rights to the cities that they otherwise would not have had. Williams disputes these claims. Because the first part of the catalyst test involves primarily factual determinations (largely related to causation), we review the district court's findings under this part only for clear error. *Supre,* 792 F.2d at 962. However, we find it unnecessary to address part one of the test in this case because the cities fail to satisfy part two. Part two of the

---

**11.** Though the disposition on the merits in *Chanute II, Chanute III,* and *Chanute IV* directly concerned only the cities' action for damages,

the rejection of the legal bases of the claims applies equally to any action for injunctive relief.

catalyst test involves questions of law which we review de novo. *Id.*

The cities fail part two of the catalyst test largely on the same basis that we found them to have failed to obtain a sufficient judicial determination on the merits in part one above. The typical situation in which attorneys' fees are available under the catalyst test occurs where a defendant changes position in response to a suit or the parties reach a settlement agreement resulting in dismissal of the suit with no further court action. *See, e.g. Maher* (upholding award of attorneys' fees under catalyst test where case was dismissed due to a settlement agreement); *Luethje v. Peavine Sch. Dist.*, 872 F.2d 352 (10th Cir.1989) (upholding attorneys' fee award under the catalyst test where employee brought § 1983 action for injunction against school policy calling for employees to refrain from discussing school problems and school district subsequently dropped the policy before adjudication). In such cases, under the second prong of the catalyst test we must determine whether the defendant's change in position in response to the suit was required under law. *See, e.g., Supre,* 792 F.2d at 962–63 (undertaking analysis determining that

12. Again, it makes little difference that our decision in *Chanute IV* specifically regarded the cities' action for damages and not for injunctive relief. The underlying legal basis for the cities' request for both remedies was the same.

13. The cities point especially to the Ninth Circuit's decision in *Southwest Marine, Inc. v. Campbell Indus.*, 732 F.2d 744 (9th Cir.1984) (*Southwest Marine I*), as precedent for the award of attorneys' fees in this case. In *Southwest Marine I,* the defendants changed position by agreement with the plaintiff, presumably in response to the plaintiff's antitrust suit. After a subsequent trial on the merits of the plaintiff's damages claim and a jury verdict in the plaintiff's favor, the district court entered judgment n.o.v. for the defendants. On appeal, the Ninth Circuit found that, absent further evidence, the plaintiff should prevail on liability. *Id.* at 747. It reversed and remanded the case for determination of some residual evidentiary questions with regard to liability and then for determination of the amount of damages. *Id.* The court found further that an attorneys' fee award under § 16 was appropriate based on the defendants' earlier change in position "whether or not plaintiff ultimately prevails on damages on remand." *Id.* In fact, on remand the plaintiff ultimately lost on liability, *Southwest Marine, Inc. v. Camp-*

defendant's conduct that mooted the suit was not legally required so as to warrant attorneys' fee award).

The case before us is unusual because we have a determination on the legal merits of the cities' claims [12] despite the fact that the parties reached a stipulation agreement resulting in the dismissal of the cities' request for injunctive relief. This makes our task much easier. In *Chanute IV* we found that the cities' antitrust allegations were without merit. Thus, any change in position by Williams in response to these claims was not required under the antitrust laws upon which the claims were based. We will not reward the cities for any benefits they achieved (if any) through this litigation where their antitrust allegations were without merit.[13]

## IV. Conclusion

We find that the district court did not abuse its discretion in granting the cities extended time to file an amended notice of appeal and therefore that all eight of the city plaintiffs are properly before us in this appeal. Further, we find that the district court

*bell Indus.*, 616 F.Supp. 253 (S.D.Cal.1985) (*Southwest Marine II*), yet the Ninth Circuit affirmed its statement regarding plaintiff's entitlement to attorneys' fees, *Southwest Marine Inc. v. Campbell Indus.*, 796 F.2d 291 (9th Cir.1986) (*Southwest Marine III*). It is this language and outcome which the cities focus on to support their motion for attorneys' fees here.

On closer examination of the *Southwest Marine* litigation, however, we do not find it to support the cities' position. In *Southwest Marine I,* the Ninth Circuit essentially found the plaintiff's antitrust claims to have legal merit. On remand, the district court dismissed the claims only due to an interim change in the law. *See Southwest Marine II.* As the Ninth Circuit subsequently noted in affirming the defendants' liability for attorneys' fees: "Southwest Marine's decision to institute litigation was neither frivolous nor unreasonable. To the contrary, its legal position at the time it filed its complaint, as well as at the time it accomplished the practical result that underlay our attorneys' fees determination, was supported by the weight of legal authority." *Southwest Marine III,* 796 F.2d at 292. This is not the situation we face here. Our rejection of the substance of the cities' antitrust claims amounts to a statement that they lacked merit from the inception of the suit, regardless of any preliminary determination by the district court.

properly denied the cities' motion for attorneys' fees.

**AFFIRMED.**